No. 22,895.

NORMA GRAHAM, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Leaving Motor Car in Highway—Frightening Horses.* The evidence examined, and held sufficient to show the defendant should have anticipated that a motor car, the modern substitute for a hand car, left in a highway, might under the circumstances frighten roadworthy horses.

2. SAME—*Excessive Verdict.* A verdict for $10,000, as damages for a broken ankle, causing much pain for a long time and some permanent disability, held excessive.

Appeal from Marion district court; ROSWELL L. KING, judge. Opinion filed January 8, 1921. Modified.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*W. H. Carpenter,* and *W. R. Carpenter,* both of Marion, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injuries resulting from negligence of the defendant in leaving a motor car, the modern substitute for a hand car, in a highway. A team of horses, drawing a spring wagon in which the plaintiff was riding, became frightened at the car, and ran away. The wagon was overturned, the plaintiff was thrown to the ground, her ankle was broken, and she sustained other injuries. She recovered a judgment for $10,000, and the defendant appeals.

The highway extends north and south. The railroad crosses it from northwest to southeast. The plaintiff approached the crossing from the south. In order to make a nearly square crossing, the highway curves toward the northwest, then toward the northeast across the railroad track, and then toward the north. The crossing is concealed by an embankment from a person approaching from the south, until he turns to cross the railroad track. When the horses, which were well broken,

were at the railroad track, they discovered the motor car fifteen or twenty feet in front of them and beside the traveled portion of the highway. The car was used by the section foreman at Burns, a station four miles south of the crossing, to transport his men and tools to their working places. The car was placed in the highway in the forenoon, and remained there until the foreman and crew returned to Burns in the evening. The foreman gave the following description of the car:

"It was a Mudge motor car. It has a gasoline engine, a motor engine placed on the trucks of a hand car, and it is run with a belt from the engine to the axle of the car. The car was painted red, the seat board, and on the back of it is two parts about a foot and three-quarters square that stood up and held the frame; they were painted red; and on the front end was—On the back end was a battery box. The battery box set inside of this frame and was about six to eight inches deep. It was about eighteen inches long and crossways was about ten inches wide, probably, or a little more. That was painted red."

On the car were tools such as section men use. The accident occurred between two and three o'clock in the afternoon. Between twelve and one o'clock of the same afternoon, another team of horses, approaching the crossing from the south, shied at the car when they reached the railroad track. The driver was able to control them, but he had trouble in getting by the car, which stood next to the beaten track of the highway. The railroad cut off a small triangular tract of land from the northeast corner of a section, and crossed a highway extending east and west, at what the witnesses called the north crossing. When the horses which ran away became frightened, they backed off the south crossing, and then ran in a northwesterly direction along a road on the west side of the railroad. While they were running they met a freight train, the engine of which crossed the south crossing about the time the horses reached the north crossing.

The court properly defined negligence, and gave the jury the following instruction:

"No. 6. You are instructed that a railroad company has the right to provide its section hands with a car to be used by them in the performance of their duties in keeping its track in good condition and repair for the safe operating of its trains, and in the use of such car the track or section hands have the right and duty to take or remove the same from the track to avoid collisions with passing trains, and in doing so if they place it upon the railroad right of way, and even though in proximity to

a public highway crossing, would not of itself constitute negligence on the part of the railroad company, and the fact that such a car is operated by motor power instead of hand power will not of itself constitute negligence. The construction and make-up of such car and manner of its placement adjacent to a highway must be such as is calculated to scare ordinary gentle horses used for carriage upon such highway and which an ordinary careful person by the exercise of proper foresight would know would be likely to scare such horses, in order to constitute negligence by such an act."

The jury found the section foreman and men were negligent in placing and leaving the motor car on the highway. The defendant argues there was no proof of negligence.

Neither party complains of the quoted instruction, but each one strives to make more of it than the language used warrants. The instruction does not define either the privilege or lack of privilege of the defendant to make use of the highway as a place to keep the car during the greater part of the day, while the section men were working in the vicinity of the crossing. That subject is an interesting one; but as the case was submitted, the meritorious question for decision is whether or not the evidence tends to show that an ordinarily prudent person would have anticipated that the car might frighten roadworthy horses.

The court has no standard by which to determine what will frighten a fairly gentle horse. Hand-car cases are collated in 42 L. R. A., n. s., 571, *note,* and the weight of authority is that the question whether or not, in a particular instance, an object such as a hand car naturally tends to frighten horses of ordinary gentleness, is one to be determined by the jury, from the appearance and locality of the object, and other pertinent circumstances. If the object does have such a tendency, an ordinarily prudent person would exercise care accordingly. In this instance, the object was one seldom encountered in a country road. It presented a striking and novel appearance, quite different from that of motor vehicles which frequent a highway, and quite different from that of any object which horses are accustomed to meet. The car was so placed that horses coming from the south were suddenly and unexpectedly confronted by the strange thing. This fact is important, because it is a matter of common knowledge that well-trained horses may be startled by coming abruptly upon even familiar

Graham v. Railway Co.

objects, especially if such objects be out of their natural set-
ting. Two teams of gentle horses—all that came to the cross-
ing from the south that day, so far as known—were fright-
ened by the car, and the court concludes the verdict was sus-
tained by sufficient evidence.

Some of the section men were Mexicans, who could not
speak English. The defendant took their depositions, and se-
lected, employed and paid an interpreter to translate ques-
tions and answers. Before the depositions were taken, the
plaintiff's attorney examined the interpreter, to ascertain his
trustworthiness. The defendant complains because the court
permitted this examination to be read in connection with the
depositions. Some of the questions propounded to the inter-
preter contained insinuations, but his answers were straight-
forward, and disclosed both competency and lack of bias in
favor of the defendant. Only a few sentences of the testimony
translated by the interpreter bore upon matters of special im-
portance, and those were doubtless overborne by contradictory
evidence, rather than by distrust of the interpreter. Besides
all this, objection to reading the examination of the interpreter
was virtually withdrawn.

The plaintiff's injuries were severe. She suffered greatly
and for a long time, and will be permanently disabled to some
extent. This court is of the opinion the verdict was excessive,
not on account of passion or prejudice on the part of the jury,
but through overestimate of damages for the measurement of
which there is no definite standard. The functions of jury,
trial court and reviewing court in such cases have been dis-
cussed so many times, it is not necessary to do so again.

The judgment is reduced to $6,000. Should the plaintiff
submit to the reduction, the judgment as modified will be af-
firmed. If not, the district court is directed to grant a new
trial of the single issue of damages.