No. 23,288.

C. E. AKINS, *Appellee*, V. JOHN BARTON PAYNE, as Agent of the FEDERAL ADMINISTRATION OF RAILROADS, *Appellant*.

### SYLLABUS BY THE COURT.

1. EMPLOYERS' LIABILITY ACT—*Injured Employee Employed in Interstate Commerce—Evidence for Jury.* The plaintiff was injured while repairing an engine at the roundhouse of defendant at Parsons, Kan. The engine had just completed a run in which it had hauled a passenger train in interstate commerce. The accident happened about four o'clock in the morning. At half past seven on the same morning the engine was assigned to go out at 9:30 a. m. to haul a regular passenger train from Parsons, Kan., to Kansas City, Mo. During the entire year prior to plaintiff's injury this engine had been used in hauling passenger trains in interstate commerce and there was no evidence to show that during that time it had been used in any other service. *Held,* the facts stated were sufficient to take to the jury the question whether the plaintiff at the time of his injury was employed in interstate commerce.

2. SAME—*Assumption of Risk—Instructions.* In an action under the Federal employers' liability act, an instruction with reference to assumption of risk is considered, and held to correctly state the law.

3. SAME—*Excessive Verdict.* The plaintiff at the time of his injury was fifty years of age and had been employed as a railroad carpenter for nineteen years. His earnings during that time had averaged $125 per month. The injury resulted in the amputation of his right leg from three or four inches below the knee. *Held,* that a verdict of $18,000 is excessive and should be reduced to $12,000.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed July 9, 1921. Modified and affirmed.

*W. W. Brown, O. T. Atherton,* and *E. L. Burton,* all of Parsons, for the appellant.

*Charles Stephens, Frank E. Dresia,* both of Columbus, and *Paul MacCaskill,* of Parsons, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was under the Federal employers' liability act. The plaintiff recovered and the defendant appeals.

Plaintiff was employed as a carpenter at the roundhouse of defendant at Parsons, Kan. The petition alleged that plaintiff was at work about 4 o'clock in the morning repairing the pilot on engine No. 394; that another engine stood on the same track near by; that the hostler in charge of it recklessly and without any warning to plaintiff started his engine so that the front of the engines came together and plaintiff was caught between the pilots of the two engines and his right leg was crushed so that amputation was necessary at a point four inches below the knee. Negligence was alleged in failing to furnish plaintiff with a safe place to work, in failing to protect him from injury by notifying other employees of his presence, and in the reckless starting of the engine without warning to plaintiff.

It was alleged that at the time the injury occurred engine No. 394 had always been and was then regularly assigned to and used continuously and exclusively in pulling passenger trains in interstate commerce, and was not used for any other purpose; that just before the accident it had come to the terminal at Parsons, Kan., from Kansas City, Mo., and at the time plaintiff received his injuries the engine had been assigned and ordered for its next trip and was then waiting under its own steam to pull the next regular passenger train from Parsons, Kan., to Kansas City, Mo., in interstate commerce. The answer was a general denial with pleas of contributory negligence and assumption of risk.

The main contention is that the plaintiff at the time he was injured was not employed in interstate commerce.

Mary O'Reagan was employed at the roundhouse as engine dispatcher and her duty was to receive calls from the yard office and chief dispatcher. She had authority over engineers and firemen. She testified that trains were called by the yard office and that she would notify the men to get the engine and would notify the engineer and fireman; that she called engine No. 394 at 7:30 on the morning of April 2 for use on a train

at 9:30 a. m. which usually left at 8 o'clock but which was late; that she received this order from the down-town yardman and he received it from the chief dispatcher who has charge of moving trains; and that no one else has authority to order engines for any particular train until the witness is notified. Her testimony was credited by the jury, and one of their special findings was that engine No. 394 was ordered by the dispatcher and the order was transmitted by engine dispatcher, Mary O'Reagan, for train No. 24 at 7:30 a. m. to leave at 9:30 a. m. They further found that at the time of plaintiff's injury this engine had not been coaled or supplied for use; and that it was the custom and practice for the train dispatcher to order engines for the various trains and designate the time when they were to be used on the particular train for which they were ordered.

An engineer, called as a witness by the plaintiff, testified that he had been with the road for thirty years; that he was running passenger trains Nos. 23 and 24 between Parsons, Kan., and Kansas City, Mo.; that engine No. 394 is one of the largest engines on the road; that he had seen this engine used in both passenger and freight service; that he had seen it in freight service on the Kansas City division. The evidence shows that on this division passenger trains run from Parsons, Kan., to the union depot in Kansas City, Mo., while freight trains on this division stop on the Kansas side at Glen Park roundhouse. On the plaintiff's motion the court required the defendant to produce the record of engine No. 394, which was offered in evidence and showed that this engine made three trips on the Cherokee division, which is interstate, two trips on the Sedalia division, also interstate, and thirty-nine trips on the Kansas City division. There was no record of where it was used from April 23 to May 28, 1918, nor on June 27 and June 28, 1918.

The defendant insists that the case falls within the doctrine of *Minneapolis & St. Louis R. R. Co. v. Winters*, 242 U. S. 353. In that case the plaintiff was injured while making repairs upon an engine which had been used in the hauling of freight trains carrying both intrastate and interstate commerce, and it was so used after plaintiff's injury. Quoting from the opinion, it was said:

"The last time before the injury on which the engine was used was on October 18 when it pulled a freight train into Marshalltown, and it was used again on October 21, after the accident, to pull a freight train out from the same place. That is all that we have, and is not sufficient to bring the case under the act. This is not like the matter of repairs upon a road permanently devoted to commerce among the states. An engine as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time not upon remote probabilities or upon accidental later events." (p. 356.)

In *Chicago, Kalamazoo & Saginaw Ry. Co. v. Kindlesparker,* 246 U. S. 657, an engine was placed in the shops April 14 and repairs were completed July 4. On July 3, it was taken to the cinder pit where plaintiff was injured while doing the final work of repair. Before plaintiff's injury the engine had been used in road service and in switching and handling indiscriminately trains carrying cars composed of intrastate and interstate traffic. After plaintiff's injury the engine was used in the same character of traffic. The lower court held that the plaintiff was employed in interstate commerce at the time of his injury because there was no evidence showing an intention of defendant to withdraw the engine from active use, except for the purpose of repairs, and because within three days after the repairs were completed the engine was again placed in its former service which comprised both intrastate and interstate commerce. The judgment was affirmed by the circuit court of appeals prior to the decision in the Winters case. Afterwards the Federal supreme court reversed the judgment on the authority of the Winters case.

In *Baltimore & Ohio R. R. Co. v. Branson,* 242 U. S. 623, plaintiff, a painter, was injured while engaged in painting cars and engines which, it was claimed, were used in interstate commerce. The trial court and the supreme court of Maryland held that he was engaged in interstate commerce. A judgment in his favor was reversed by the supreme court of the United States in a memorandum opinion on the authority of the

Winters case, and *Shanks v. Del., Lack. & West. R. R.*, 239 U. S. 556.

In *Chi., Burlington & Q. R. R. v. Harrington*, 241 U. S. 177, plaintiff was a member of a switching crew engaged in switching loaded coal cars from coal chutes which supplied, as needed, locomotives engaged in interstate, and also those engaged in intrastate traffic. It was held that he was not employed in interstate commerce.

A case directly in point with the case at bar was before the supreme court of Oklahoma. In *Chicago, R. I. & P. Ry. Co. v. Cronin* (Okla. 1918), 176 Pac. 919, an employee was injured while repairing a locomotive which had just been used in pulling an interstate passenger train and which was repaired in time to make its next regular interstate trip. The Oklahoma court held that the facts were not sufficient to bring the case within the Federal employers' liability act. It was said in the opinion:

"The fact that the repairs had been made and the engine placed back in service in time to make its regular trip from Sayre, Oklahoma, to Amarillo, Texas, does not necessarily mean that the engine was not out of service in the meantime. We cannot agree with the plaintiff in error that this broken down engine was in interstate commerce at the time of the accident; indeed, it was not in commerce of any kind. It was 'dead,' undergoing the repairs necessary to placing it in commerce." (p. 920.)

There is a strong similarity in some of the facts in the present case to those in the Winters case because in both the engine was used on an interstate trip before it was repaired, and immediately after being repaired was placed in the same kind of service. We think, however, that this case should be distinguished from both the Winters case and the Kindlesparker case. In those cases the engine had been used indiscriminately, at times in interstate and at other times in intrastate traffic. In the opinion in the Winters case it was expressly said:

"And it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. . . . Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen." (p. 356.)

In both of the cases upon which the defendant relies the engine, prior to being repaired and after being repaired, was used in interstate and intrastate traffic, so that it was just as

Akins v. Railway Co.

logical in those cases for a jury to find that while being repaired the engine was in one kind of traffic as to say that it was in the other. In the present case defendant insists that plaintiff failed to produce evidence to show that if the repairs to this engine had not been completed in time to take out train No. 24 on the morning of April 2, the engine might not have been used for traffic other than interstate in character. A sufficient answer to this contention is that, while one of plaintiff's witnesses, an engineer, testified that he had seen engine No. 394 hauling freight trains on the Kansas City division (which freight division is wholly within Kansas), yet the testimony failed to show when this engine was so used. So far as appears from defendant's record of the service of engine No. 394 during the entire year prior to the accident, it was used solely in hauling interstate passenger trains, and within three hours after the plaintiff's injury it was assigned to and on the same day was used in the same kind of traffic. If the plaintiff's evidence had shown, or if it had appeared from the testimony of the defendant, that this particular engine was used at times in intrastate service, there would be force in the defendant's contention. Ordinarily an engine is not permanently devoted to any kind of traffic—as is a bridge or other permanent structure, but we think there was evidence in this case sufficient to sustain the finding that the engine had been devoted solely to interstate traffic for a year before plaintiff's injury, and continued thereafter in the same character of traffic. It is therefore held that plaintiff at the time of his injury was employed in interstate commerce.

There is complaint of an instruction with reference to assumption of risk, but the court correctly stated the rule that plaintiff could not be held to have assumed the risk unless he appreciated the danger, or unless a reasonably prudent person under the same circumstances and knowledge would not have entered upon the work at the time and place. (*McMullen v. Railway Co.*, 107 Kan. 274, 191 Pac. 306.)

The facts upon which the claim of contributory negligence is based have been found adversely to the defendant.

The jury made a finding that the defendant was negligent in failing to provide plaintiff with proper signals for his protection and it is insisted that this was not a ground pleaded in the

petition nor submitted to the jury. It comes, we think, fairly within the first and second grounds which were submitted to the jury—failure to furnish a safe place; the promise to protect the plaintiff and a failure to do so.

The jury allowed the plaintiff $18,000 for permanent injuries, and in their special findings stated that nothing was allowed for pain and suffering. It is insisted that the amount is excessive. Plaintiff testified that he was fifty years of age, and while employed as a carpenter for the railroad company his earnings would average $125 per month; and that after he recovered from his injury he procured an artificial limb, and for three months previous to the trial had been engaged in driving a taxicab which he owns. His life expectancy is about twenty-one years. In view of the age and earnings of the plaintiff, the court is of the opinion that $18,000 for the loss of a leg from three to four inches below the knee is excessive, and that the judgment should be reduced to $12,000, the plaintiff to be given the election to accept that amount or another trial upon that issue.

The judgment will be modified in respect to the amount of the judgment, and as modified, affirmed.

PORTER, J., dissenting from first paragraph of syllabus and corresponding part of the opinion.