No. 30,728.

ALBERT DYER, *Appellee*, v. E. R. KEITH, *Appellant*.

(14 P. 2d 644.)

.Opinion filed October 8, 1932. 

M. A. *Gorrill* and A. B. *Mitchell,* both of Lawrence, for the appellant.
R. E. *Melvin* and *George K. Melvin,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The serious and difficult question involved in this appeal is whether the different items of the question submitted to the jury as to the amount of damages allowed for apparently different reasons overlapped each other and thus duplicated the allowance made.

The general verdict was for $8,000 for damages sustained by the plaintiff on account of injuries received in an automobile collision. The one special question asked the jury and the itemized answers given to it were as follows:

"Q. If you find for the plaintiff, state how much you allow for (*a*) medical attention, $485; (*b*) loss of time, $4,250; (*c*) pain and suffering, $1,265; (*d*) for future disability, if any, $2,000—$8,000."

There is no complaint about the answers to items A and C, medical attention and pain and suffering, but it is claimed by the appellant that loss of time can apply only to loss of time prior to the trial because the last item, D, is for future disability, if any, and it would include any future loss of time as a feature of the disability, if any. Appellant then shows from the evidence that under the most liberal view of the earnings of the plaintiff for the slightly more than eleven months intervening between the date of the injury and the time of the trial would not amount to as much as half of the $4,250 allowed for loss of time. It is therefore concluded by the appellant that there must be an overlapping by including in this amount something for future loss of time, which would be a duplication of future disability. The facts compel an acceptance of this view to the extent of concluding that part of the $4,250 is necessarily for future loss of time, or for loss of time after the date of the trial. Is the allowance, then, for loss of time after the date of the trial an overlapping or duplication of the allowance for future disability? It is suggested that the appellant should not be heard to complain, because the matter could have been avoided by the use of more distinctive terms in the question submitted. But the court is responsible for the form of questions submitted, and the party suggesting or

requesting them is not on that account deprived of the privilege of urging a particular construction therefor or a necessary significance thereof. (R. S. 60-2918, *Jones v. Interurban Railway Co.*, 92 Kan. 809, 141 Pac. 999; *Doty v. Crystal Ice & Fuel Co.*, 122 Kan. 653, 253 Pac. 611; and *Billings v. Aldridge,* 129 Kan. 772, 284 Pac. 404.) Of course, any loss of time or earnings in the future or after the trial on account of the existing disability could very properly be included in the item of future disability. The terms are not, however, exactly synonymous, as some disabilities would not occasion a loss of time.

This matter was considered in the case of *Madison v. Railway Co.*, 88 Kan. 784, 129 Pac. 1188, where the jury allowed nothing for future loss of time and earnings but returned $9,000 damages for its general verdict and found in answers to special questions $7,000 for injury to the knee and $2,000 for injuries to abdomen and kidneys. This court, in affirming the judgment for $9,000 rendered thereon, said—

"Something might very well have been allowed for loss of earnings in the future, but the jury probably concluded that, having awarded damages for permanent injuries, the loss of earnings in the future was covered by that award." (p. 788.)

Under this authority the jury can very properly allow for loss of time and earnings in the future as well as, and in addition to, the damages for permanent injuries.

Appellant also cites the case of *Railway Co. v. Bricker*, 65 Kan. 321, 69 Pac. 328, where it was held in effect that while loss of ability to earn a livelihood and permanent injuries constitute one item of damage, yet where there is a request for a division of the damages allowed in the general verdict by securing answers to special questions, it cannot be afterwards claimed that the amount allowed in one such item includes all that the injured party was entitled to as damages for the injury, unless the aggregate amount is excessive. In that case the questions and answers were as follows:

"If you find for the plaintiff, how much do you allow him for the loss of ability to earn a livelihood? A. $3,000.

"If you find for the plaintiff, how much do you allow for the permanent injuries, exclusive of the amount, if any, allowed for the loss of ability to earn a livelihood? A. $3,000." (p. 325.)

Disability is defined in 18 C. J. 1046 as—

"A deprivation of ability, a state of being disabled; incapacity; impotence, weakness; a want of competent power, strength, or physical ability. The term may include mental as well as bodily disability."

This shows that disability and loss of time or earnings are not synonymous, but the latter can very properly be included in the former, and should be so presented to the jury, but where it is plainly apparent that it was not so intended either by the jury or the trial court, but obviously intended to be separate and distinct, it is not an overlapping or duplication.

"The element of loss of time is held properly to include only such loss as has accrued up to the time of trial, a subsequent loss of time is to be included in a recovery for decreased earning capacity. Hence a recovery both for loss of time and for impairment of earning capacity is not a double recovery." (17 C. J. 781.)

In reaching this conclusion we are adhering to the following well-recognized rule stated in the case of *MacElree v. Wolfersberger*, 59 Kan. 105, 52 Pac. 69, and frequently quoted with approval in subsequent decisions.

"Where the findings of the jury are susceptible of two interpretations the court will, if possible, adopt the one which will harmonize them with and sustain the general verdict." (Syl. ¶ 3.)

The appellant urges that the total amount allowed is excessive, especially the alleged overlapping part is excessive, and under the authority of the Bricker case, *supra*, the verdict should not be approved.

Appellee at the time of the injury was 47 years of age, was a farmer on a 177-acre farm in Douglas county, Kansas, and was also engaged in buying and selling stock, and also worked for the county with his team plowing and grading roads. The injury sustained by him in the collision was a fracture of the socket of the left hip into which enters and fits the end of the left femur, leaving the left leg about three-fourths of an inch shorter than the right. The injury occurred on December 1. The plaintiff was kept in a plaster cast for eight or ten weeks. He began using crutches in April, and at the time of the trial in the latter part of November he was beginning to bear some weight on the leg, and could ride around some in a car to buy stock and could go up and down stairs. The physicians said at the time of the trial he might be able to dispense with the crutches in about another month; that there was still some roughness in the socket, and it would require about six months more time for it to smooth down; that there was some atrophy of the muscles of the leg, that they could not tell just how long it might require for the smoothing of the socket and getting the muscle power back, but that

plaintiff was otherwise in normal health and improving normally. One physician said he believed the plaintiff would always have a weakness or partial disability in the left leg.

Appellant cites *Graham v. Railway Co.*, 108 Kan. 232, 194 Pac. 930, and *Akins v. Railway Co.*, 109 Kan. 474, 199 Pac. 464, in support of his contention that the verdict is excessive. In both these cases this court held the verdicts were excessive, the former being where a woman was injured resulting in a broken ankle from which she suffered greatly and will be permanently disabled to some extent, and the court held the $10,000 verdict was excessive and reduced it to $6,000. In the latter case the injury caused the amputation of the right leg three or four inches below the knee. The injured party was a carpenter fifty years of age, whose usual earnings had been $125 per month. The jury awarded him $18,000, and the court reduced it to $12,000.

Leaving out the two items allowed in this case for medical attention and pain and suffering, about which there is no question raised, the other two items amount to $6,250, for loss of time and future disability. This amount for the injury in the instant case, as above described, which includes loss of time both before and after trial and future disability, does not seem to us to be excessive, either by comparison with the other cases above cited or as reasonable compensatory damages, and it does not seem to be an overestimate of damages, for which in such cases, as was said in the Graham case, *supra,* "There is no definite standard." A careful examination of the evidence shows there was evidence to support and justify these allowances made by the jury.

One other point urged by the appellant is that the court erred in giving the jury an instruction to the effect that plaintiff was not responsible for the condition of the truck at the time the accident occurred. The court did not make an instruction that broad for every purpose, but did tell the jury that the plaintiff could not be charged with the stopping or situation of the truck on the highway, because he was not in charge of it. The truck did not belong to the plaintiff, but he had hired it and a driver to haul a load of hogs to market, and he accompanied the driver with the load; that about two miles south of Lawrence the truck went dead and the driver ran it off the pavement as far as it would go, and the left wheels of the truck were about one foot or eighteen inches on the pavement; that plaintiff and the driver both tried to push it entirely off the

pavement, but could not do so. The driver left it there in low gear and walked to the city for repairs, while the plaintiff remained with the truck. When it became dark plaintiff turned on the lights, including the tail light and the stop light. When the driver returned with a new coil the plaintiff assisted him to substitute it by standing in front of the truck and holding a flash light so the driver could see to replace the coil. They were in this position when the defendant came from the rear in his car and ran into the truck, which moved forward about fifteen feet, knocking the plaintiff down and dragging him under the front axle. The defendant was injured and charged the plaintiff with contributory negligence and sought to recover damages from him in the same action on his cross petition. There was a conflict in the testimony as to turning on the tail light and the stop light, and the court submitted that feature of responsibility to the jury but did exonerate the plaintiff by the instruction complained of as to responsibility for the stopping and situation of the truck, for the reason that he was not in charge of it but was only accompanying the hired driver and the load of hogs. No authorities are cited in support of the error here assigned, and we think the instruction was correct under the facts and circumstances of the case.

The judgment is affirmed.