No. 27,713.

IONE EBAUGH, *Appellant,* v. LEE MILLER, *Appellee.*

(274 Pac. 251.)

Opinion filed February 9, 1929.

*W. H. Carpenter, W. R. Carpenter,* both of Marion, and *Edwin Anderson,* of McPherson, for the appellant.

*James Galle, P. J. Galle,* both of McPherson, *F. L. Martin* and *James N. Farley,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for slander. The verdict and judgment were for defendant, and plaintiff appeals.

Plaintiff was a member of the Baptist church of her city, was clerk of the church, and was a teacher in the public schools. Defendant was a member of the board of education of the city and chairman of the committee on school buildings. In November, 1925, the janitor of the building in which plaintiff taught reported to defendant that the pastor of the Baptist church was coming to plaintiff's room after school hours and remaining until after dark. The pastor was invited to appear at a meeting of members of the school board, which was regarded as confidential. He explained that he went to the school building to do church work which required plaintiff's assistance. After the meeting he discontinued his visits—there was evidence he agreed to keep away—and it was believed the matter was at rest. In February, 1926, the janitor gave information to

a member of the school board of renewed visits and of improprieties. Investigation led to a special meeting of the board on March 8. The janitor, the pastor and plaintiff were called before the board in executive session. The result was, the board decided that plaintiff should be permitted to teach the remaining months of the school year, but that she should not be reëmployed.

Following the special meeting there were rumors and gossip. Plaintiff's brother, Clarence Ebaugh, heard there had been some kind of an investigation. His mother told him some of the principal things, and he went to the president of the school board for further information. The president told him something of the story, and Clarence asked if there was anyone else he could see to find out more. Clarence and defendant were friends of long acquaintance, and Clarence went to defendant "to find out the truth of the rumors he had been hearing" about his sister and the pastor. Defendant knew Clarence was plaintiff's brother. The interview was private. Clarence told defendant what he wanted to know, and defendant gave him the information defendant had acquired. The interview occurred on March 30.

J. C. Johnson's wife was a cousin of plaintiff. Plaintiff's mother told Mrs. Johnson plaintiff had lost her position in the city schools. Johnson was a resident of the city, was interested in plaintiff, and wanted her to have her place if it could be arranged. Johnson knew defendant was a member of the school board, and had been told defendant was chairman of the board. Johnson testified he went to defendant's office to talk to him concerning his duties as a member of the school board in the employment of teachers. The interview occurred about April 9, and was private. Johnson asked defendant how serious or how grave the charge was against Miss Ebaugh to justify the school board in turning her down and not giving her position back.

Defendant gave Johnson the reasons for not reëmploying plaintiff. Johnson knew defendant was telling what the janitor reported he saw. At the close of the interview Johnson thanked defendant for the information, shook hands with him and departed. Johnson then went to see other members of the school board to discuss advisability of circulating a petition for plaintiff's reëmployment.

Charles S. McGiffert was a trustee of the Baptist church. He heard a rumor connecting the pastor of the church with plaintiff.

One of the deacons of the church asked McGiffert to see defendant about it. The deacon and the trustee went into defendant's private office, and the deacon asked defendant to tell the story to the trustee. All the ensuing conversation related to what occurred at the executive meeting of the school board. McGiffert understood that what was said at the meeting was what the janitor claimed he saw. The interview with McGiffert occurred on April 9.

The petition contained three counts, based on the interviews with Ebaugh, Johnson and McGiffert. A fourth count, based on a statement concededly privileged, was withdrawn by the court from consideration by the jury.

Defendant said to Johnson it was unfortunate for the girl, and said to plaintiff's brother that if the preacher had possessed the sense God gave a goose it would not have happened; but no evidence is abstracted disclosing any specific statement concerning plaintiff made by defendant at any one of the three interviews which was not within the fair and reasonable purview of the inquiry.

The court instructed the jury that Ebaugh, Johnson and McGiffert each had an interest in the subject to which their inquiries related, and defendant's communications to them were conditionally privileged. The petition and the brief of plaintiff present the case as if it were one of a member of the school board going about, after final action by the board, and voluntarily spreading slander. The rule of common interest, as for example, common interest of members of a school board, members of a church, or other organization, is invoked, and it is said one friend may not, in conversation with another friend, slander a third person, however strongly solicited to do so. The case is governed by an entirely different rule—the rule relating to confidential communications made in good faith in response to inquiries by a person having an interest in the information sought. In such cases the person of whom inquiry is made rests under a duty, legal, moral or social, according to the nature and purpose of the inquiry, to tell what he knows regarding the subject inquired about. (36 C. J. 1246, § 214; 1271, § 260. Newell on Slander and Libel, 4th ed., §§ 409, 410.)

Clarence Ebaugh was plaintiff's brother.

"The plaintiff, after his dismissal by the defendant, had tried for other situations, but failed because he could not get a character from the defendant. The brother then asked the defendant why he declined to give one. The de-

fendant was bound to state in answer, not only why he dismissed, but why he refused to give a character." (*Taylor v. Hawkins,* 16 Ad. & Ell. n.s., [Q. B.] 308, 322.)

Johnson was a relative of plaintiff by marriage, was in fact interested in the reëmployment of plaintiff, and was a citizen commendably interested in decent discharge of the school board's official duty in the matter of employing teachers. McGiffert was a trustee of the church of which plaintiff was a member, holding the office of clerk, and whose pastor was involved. The result is, defendant's answers to the inquiries of Ebaugh, Johnson and McGiffert were conditionally privileged. This leads to consideration of the subject of malice.

Johnson testified defendant was bitter toward the pastor. What defendant said to Clarence Ebaugh concerning the pastor has been stated. There was other evidence that defendant was very indignant toward the pastor. A committee of the ministerial union of the city had charge of religious education in the schools. The ministerial union took cognizance of the rumors regarding the pastor's indiscretions. Four ministers testified that at a meeting of the union the pastor not only admitted he had made an ass of himself, but he said he would make it stronger; he had made a damn fool of himself. Of course the pastor denied this, but his reverend associates so testified. From defendant's point of view, the school board saved the situation in November, but the pastor did not stay away, and he furnished the occasion for the gossip which compromised himself, compromised the plaintiff, compromised the school board, and made it necessary, in the judgment of the board, to drop plaintiff as a teacher for the good of the school. It was not enough that defendant bore malice against the pastor. Plaintiff was obliged to prove that defendant was actuated by malice in fact toward her. The court instructed the jury that malice toward the pastor did not warrant an inference of malice toward plaintiff, and malice toward plaintiff should be determined by consideration of all the evidence.

In Newell on Slander and Libel, 4th ed., § 711, appears the following:

"It cannot be shown in a libel action that defendant has libeled or threatened to libel third persons, but it has been held that, in judging of the malicious character of an alleged libel, the jury may take into consideration the whole publication, and if it contains statements concerning other persons

which are malicious, the jury may infer therefrom that what it said of the plaintiff is also malicious."

The authority for the concluding portion of the paragraph is the case of *Miller v. Butler & another*, 6 Cushing (Mass.) 71 (1850). The author's text is taken from the reporter's headnote, which was derived from a ruling of the trial judge made during the argument of the case. The letter containing the libel is not quoted in the report of the decision, and the ruling may have been perfectly proper under the circumstances, but it did not announce a general rule of law. The pertinent portion of the opinion of the supreme court follows:

"The jury might properly take into consideration the entire letter and all the circumstances, and decide whether that part of the letter which was applicable to the plaintiff was malicious on the part of the defendants." (p. 74.)

The only expression of defendant's attitude toward plaintiff contained in the evidence in her behalf is defendant's statement to Johnson that it was unfortunate for the girl. In that interview Johnson said the preacher ought to be strung up. Malice toward plaintiff on Johnson's part is scarcely inferable from his statement. The circumstances forbid. Sympathy for the young woman in plaintiff's situation, and not malice, is a perfectly natural sentiment. Defendant testified he bore plaintiff no ill will, and had done all he could to protect her; and in this instance the court properly required the jury to consider all the evidence in determining whether defendant maliciously defamed her.

The jury found plaintiff was innocent of the improprieties on her part which had been talked about, and found that defendant acted both without bad faith and without malice, in his conversations with those who interrogated him.

The judgment of the district court is affirmed.