No. 33,024

BARBARA ANN JONES, a Minor, by MRS. JAMES W. JONES, Her Mother and Next Friend, *Appellee,* v. MRS. NORA JONES GILL, *Appellant.*

(66 P. 2d 579)

April 10, 1937. Opinion filed

*Aaron Coleman,* of Hutchinson, for the appellant.

*J. N. Tincher, Clyde Raleigh* and *Leaford Cushenbery,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for slander. Plaintiff recovered a judgment, and defendant has appealed.

The record discloses that James W. Jones, Moreland Jones and Harold E. Jones, brothers, are adult stepsons of defendant. She married their father and lived with him at Hutchinson until his death in the early summer of 1932. Soon thereafter she moved from Hutchinson, and when this action was brought, in January, 1935, her home was in El Dorado. She and her stepsons "always got along

fairly well." It further appears that perhaps in November, 1931, James W. Jones and his wife, Daisy Jones, adopted a little girl about two weeks old, to whom they gave the name of Barbara Ann. This action was brought for her by her foster mother as next friend.

In the petition it is alleged defendant had spoken of and concerning the little girl the following slanderous and defamatory matter, that she was "a half-breed child, having a white father and a negro mother"; that the slanderous statements were made at defendant's home in Hutchinson, to Harold E. Jones, about December 1, 1931, and to Moreland Jones about May 1, 1932; that the statement was untrue and was intentionally and maliciously made for the purpose of injuring the minor child, who is not of negro or African descent, but that both her parents are of Caucasian descent; that by reason of the false and slanderous statement plaintiff has been subjected to scorn and contempt and defamation of character, not only by adults but by children of her own age, greatly to her humiliation, injury and damage in a sum named. The answer contained a general denial and alleged if such statements had been made to the parties named in the petition the same were privileged, because both Harold E. Jones and Moreland Jones are stepsons and members of the family of defendant. The reply was a general denial.

At the trial it was stipulated that the child, Barbara Ann Jones, is not a negro child and is a white child, or a member of the Caucasion race. Harold E. Jones, as a witness for plaintiff, testified that he was at the home of his father and stepmother in Hutchinson in December, 1931, not far from the time the child was adopted, and while there he and his stepmother, the defendant herein, had a talk about the child. Asked to state the conversation, he answered:

"Well, she asked me what I thought about my brother adopting the child; I said I thought it was his own business, and she asked me if I didn't think there was something funny about it, and I said I didn't know anything about it. She said she thought the child was a negro child, and asked if I didn't think so, and I said I don't know anything about it."

He further testified that was the only time he and defendant talked about the matter; that what defendant said at that time did not influence him in any manner against the child; that he did not repeat in the neighborhood what defendant had said, and that he had told it only when he was asked about it by an attorney, and perhaps one other person, in connection with this lawsuit.

The other witness for plaintiff was the foster mother and next

friend of plaintiff. She testified the child was adopted when she was two weeks old; that the adoption was made through a named physician, who is not related in any way to the parties in this case; that she had had the care of the child since the adoption; that they were then living in a named block in Hutchinson, but later moved to another neighborhood because the child was ashamed of the humiliation of the neighborhood children calling her a negro; that this commenced when the little girl was about sixteen months old. Over defendant's objection she was permitted to testify that she had made an investigation to determine the origin of this slanderous statement and "found that Mrs. Gill had circulated that tale among my friends and relatives; . . . they had all heard it from Mrs. Gill"; that later she had to take the little girl from Sunday School "because she was called a nigger in the Sunday School"; that the story followed into another neighborhood into which they moved; that the children there called her a "nigger," and she would come into the house crying and nervous; that the story became town-wide. In answer to a question she stated she had talked to defendant about the child a few days before Christmas in 1931, and, being asked to state the conversation, testified, over defendant's objection:

"I called up Mrs. Gill in her home and asked her why she had circulated this tale that this child was colored, and she denied she had ever told anyone, and I told her that my brother-in-law and another party had told me, and she denied that also; and she further admitted that she had heard the tale and told me I couldn't deny the child was colored because everybody in town knew that the child was colored, and that my husband was the father of the child and that the mother was a 16-year-old colored girl."

Defendant's motion to strike this out was overruled.

The witness further testified, over defendant's objection, that she offered to bring to defendant the physician through whom they had adopted the child to prove the child was a white child, but defendant "told me I didn't need to bother to do that, she wouldn't believe him any quicker than she would me." She further testified, over defendant's objection, that she had learned defendant later made similar statements to the effect the child was a colored child, to other persons, and named five, including Moreland Jones. But the court struck out all of this except as to Moreland Jones as not being within the issues. On being asked why the action was not brought earlier the witness replied she didn't know for sure defendant had told it.

Defendant's demurrer to plaintiff's evidence was overruled. Defendant offered no evidence. The jury returned a verdict for plaintiff for $7,000. · Defendant's motion for a new trial was overruled upon condition that plaintiff consent to a reduction of $2,000 in the verdict. Plaintiff did this, and judgment was rendered for plaintiff for $5,000.

Appellant argues that her demurrer to the evidence should have been sustained, but in view of the testimony which the court admitted it can hardly be said there was nothing to go to the jury. It is next argued that the court erred in the admission of evidence. The petition had charged plaintiff with making the alleged slanderous statement to two individuals; to one at one time; to the other several months later. Only one of those testified, but it is clear from his testimony that no substantial damage was done to the little girl by reason of what the defendant said to him. He was not influenced in any manner against the little girl by reason of it, and he did not repeat the statement to anyone except to plaintiff's attorney and another about the time or after this action was started. So far as any substantial damage to plaintiff is concerned, the only evidence to support it is the testimony of the foster mother and next friend. As to her testimony, appellant correctly contends that much of this was incompetent as being hearsay and as not being within the issues formed by the pleadings.

The testimony of this witness disclosed that the story that the child was a negro, or part negro child, became a matter of neighborhood comment which spread, as such stories sometimes do, until it became town-wide; that the foster mother, naturally concerned about it, traced through this maze of gossip until she learned or was told defendant started it. The witness made no pretense of having personal information on that subject, but states her conclusions on what other persons told her. Who these persons were, or what they said, is not disclosed. Obviously this testimony was incompetent as being hearsay. The testimony of the witness as to what defendant said to her over the telephone concerning the parentage of the child and her unwillingness to believe the physician any more than the witness was not within the issues. Plaintiff had not charged these things as grounds for the recovery of damages. This telephone conversation was more than three years before the action was brought, and there is no contention, either in the pleadings or in the evidence, that the town-wide rumor which

caused damages to the child started, or was spread, by what defendant said to this witness over the telephone. We are not called upon to determine whether what defendant said at that time might form the basis of an action for damages, for this question is not before us, and we mention this only because of argument on this point in appellee's brief. The judgment must be reversed because of the reception of the incompetent evidence over defendant's objection and to her prejudice.

Since a new trial must be had, two other points argued by appellant must be noticed. It is argued there is a fatal variance in the slanderous words charged in the petition to have been made to Harold E. Jones and his testimony as to the statement which was made by the defendant. The old rule in slander cases was that any variance was fatal. This was found to be too strict. The later rule, now generally accepted, is that if the language proved to be used carried the same meaning as that charged, the variance is not material (*Cooper v. Seaverns*, 97 Kan. 159, 160, 155 Pac. 11), and, normally, whether there is such a variance is a question for the jury. (37 C. J. 101.) In this case it cannot be said, as a matter of law, that the variance was so great as to be fatal. Appellant complains that the court did not instruct the jury on the privileged character of the language charged to have been used to the persons named in the petition, since they were members of her family, citing 36 C. J. 1271; 17 R. C. L. 341, 368; *Ebaugh v. Miller*, 127 Kan. 464, 274 Pac. 251, and other authorities dealing with the question of privilege as it pertains to communications in the family. Since this is an issue raised by the pleadings, and under our statute (G. S. 1935, 60-2909) the court is required to give general instructions to the jury, an instruction on this point might have been given. However, the question appears never to have been mentioned in the trial. No objection was made on that ground to any evidence, nor was there a motion to strike out any evidence on that ground, nor was the court requested to give an instruction on that issue. In addition to that, as previously noted, the evidence does not disclose any actual damage was sustained by the little girl because of what the defendant said to her stepson; hence, even though the issue was raised by the pleadings it became of little consequence in the trial.

From what has been said the judgment of the trial court must be reversed, with directions to grant a new trial. It is so ordered.