No. 37,852

HOMER J. BALTHAZOR and ARLENE BALTHAZOR, *Appellees*, v. B & B BOILER & SUPPLY COMPANY and INDUSTRO SALES & EQUIPMENT COMPANY and MID-CONTINENT BUTANE EQUIPMENT COMPANY, *Appellant*.

(217 P. 2d 906)

Opinion filed May 6, 1950.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky,* all of Wichita, were with him on the briefs for the appellant.

*Joe T. Rogers,* of Wichita, argued the cause, and *Roy L. Rogers,* of Wichita, was with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action to recover damages alleged to have been sustained when a heating plant in a poultry house operated by

plaintiffs ceased to function one morning. A mistrial was declared after the evidence of both parties had been introduced. The appeal is from the trial court's order overruling defendant's demurrer to plaintiffs' evidence.

The action was brought against three defendants, the B & B Boiler and Supply Company, which made the propane tank involved; the Industro Sales and Equipment Company, which sold plaintiffs the tank, and the Mid-Continent Butane Equipment Company, which sold plaintiffs propane gas at various times.

Subsequently an amended petition was filed against the Mid-Continent alone. The action was carried on against it only. The amended petition alleged the existence of the parties; that plaintiffs were operating a plant for raising chickens from two or three days old to maturity; that about November 1, 1947, plaintiffs purchased from Industro Sales and Equipment Company a thousand gallon propane tank, together with a regulator to control the flow of gas, and this tank was connected with pipes through which the gas flowed to heating units; that they purchased from Mid-Continent propane gas, as follows: November 1, 1947, 670 gallons; on December 12, 1947, 300 gallons; on January 24, 1948, 670 gallons; and on February 18, 1948, 225 gallons; that this gas was delivered to plaintiffs by Mid-Continent; that about February 7, 1948, the equipment did not work; the fires went out and before this was discovered the young chickens in the plant were chilled so that 1,214 of them died and 2,600 others were damaged; that they were in all worth $3,913; that plaintiffs paid $228.98 for the propane and had lost $2,191.25 on account of feed and care.

The amended petition then contained a paragraph, as follows:

"Plaintiffs further charge that such loss above set out resulted to them by reason of the grade or condition of the propane sold to them by the defendant, the Mid-Continent Butane Equipment Company in that such propane was inferior and defective and that it contained elements of water and that such water froze in said regulators and caused the failure herein set forth."

Judgment was asked for $6,104.95.

The answer was a general denial and an allegation that if defendant was guilty of any negligence the plaintiffs were guilty of contributory negligence. The reply was a general denial.

After the opening statement, defendant moved that plaintiffs be compelled to elect upon what theory they were proceeding, whether negligence or breach of implied warranty. This motion was overruled. In response to a query by counsel for defendant as to what

theory the plaintiffs were proceeding under, the trial court said: "Just what he has pleaded."

The plaintiffs were husband and wife. Homer J. Balthazor, the husband, testified about acquiring the heating system and that they had a thousand gallon tank with a regulator on top; that they bought propane from Mid-Continent; that the system "froze up" about the middle of January; that it was working at 10 in the evening and at 5 the next morning all the stoves were out; that the fires had never gone out up to this time; that they called Mid-Continent and a man came, who said he was from there, and told witness he poured hot water on the regulator and told him the next time it froze up to do the same; that after this had been done the stoves were lighted and all burned and they had no trouble since; that about 1,200 chickens died in three weeks after the occurrence. The testimony of Mrs. Balthazor was about the same except that she saw the man pour the hot water on the regulator. She also testified they bought no propane from any other company and on January 24 the man who delivered it delivered two gallons of alcohol with it and told her husband if the alcohol was put in they would not have any worry about it freezing, and the plant had never failed to operate since that time.

The witness who sold plaintiffs' heating system testified in regard to a regulator that

"It has a diaphragm spring and diaphragm you can adjust that to any pressure you want it. It is standard operation, it is set on six ounces and supposed to be that way when it comes out. If not proper installation, after it is installed, it is supposed to be tested by air, which you can test that to six ounces pressure and adjust it if it isn't set when it is installed."

He further testified that he had seen a regulator stop working due to condensation and assuming that a regulator stopped working during cold weather, and when hot water was poured on it, it started working again, he would say there was moisture on the diaphragm which froze; that propane came from the tank as a gas.

On cross-examination he testified that possible sources of water in a propane tank would be condensation, evaporation, refrigeration or liquid in the gas; that some propane tanks were tested at the factory for possible leaks by pumping them full of water under pressure; that deliveries of propane are made by a long high-pressure hose which runs from the tank on the truck and is hooked on the filler valve of the tank; that Mid-Continent made a lot of their deliveries direct from the Cities Service refinery.

The assistant plant supervisor for the Cities Service refinery testified that propane gas was perfectly dry when it got to their storage and from their storage tanks it was delivered to transports, tank cars and small trucks; that he knew of no way in which water could be injected into the gas from the time the Mid-Continent got it, assuming there was a direct delivery to the time it was delivered.

At this point the plaintiffs rested and defendant demurred to the evidence for the reason that it failed to establish a cause of action against it. This demurrer was overruled and the defendant rested without introducing any evidence. Before the cause could be submitted to the jury a mistrial was declared on account of misconduct of a juror.

The specifications of error are that the court erred in overruling defendant's demurrer to the evidence, in failing to hold that plaintiffs' evidence was insufficient as a matter of law to show negligence on the part of the defendant and in failing to hold that as a matter of law there was no implied warranty, and in failing to hold that plaintiffs' evidence was insufficient as a matter of law to show a breach of implied warranty by the defendant.

The charging part of the plaintiffs' petition is contained in paragraph 6 thereof. It has already been set out in this opinion. It pleaded that the loss was caused because the propane sold to plaintiffs by defendant was inferior and defective, contained water which froze in the regulators and caused the failure of the stoves to burn at a critical time. In other words, the plaintiffs bought propane to burn and the propane sold them by defendant would not burn on account of containing water. The action was tried in the court below and argued here on that theory.

The theory of plaintiffs is treated in *Lumber Co. v. Mercantile Co.*, 114 Kan. 10, 216 Pac. 815. In that case a contractor ordered two cars of Portland cement. When the cement was delivered the trial court found it to be of a poor and inferior quality and so defective that it would not produce a solid smooth hard glazed surface on the floors. The contractor refused to pay and when the lumber company sued the court held there was an implied warranty that Portland cement properly mixed would produce the kind of floor described. We said:

"Applying the same principles to the present case, it follows that there was an implied warranty as to qualify; the article purchased was Portland cement; the thing delivered was not Portland cement, because it did not possess the

well-known qualities and characteristics which Portland cement always possesses. Portland cement is a definition and means a standard, not a brand. In this respect it is like the use of the definition 'Sterling Silver.' The term, Portland cement, is understood in the building trade generally to mean an article which possesses certain qualities."

In the case we are considering propane is a name given to a liquid which is really natural gas compressed at a low temperature and when released by means of the regulator through a small vent becomes an inflammable gas which flows through pipes to stoves. When a purchaser buys propane he buys it to burn and it can only be burned if it escapes through a regulator such as we have here. There was substantial evidence that propane when it is manufactured is perfectly dry, that is, it has no moisture content. What plaintiffs bought was a perfectly dry product with no moisture content whatever, while what was delivered to them was gas with water in it. What was said in *Lumber Co. v. Mercantile Co.,* supra, is controlling here. (See *Bigger v. Bovard,* 20 Kan. 204; *Tank Co. v. Oil Co.,* 108 Kan. 690, 196 Pac. 1111; and *Johnston v. Lanter,* 87 Kan. 32, 123 Pac. 719.)

Defendant points out first that the allegations of the petition must be proved and argues the burden was on plaintiffs to prove the propane sold plaintiffs by defendant was of an inferior quality; that they did not sustain this burden and the demurrer should have been sustained.

A cause of action may be proved by circumstantial evidence, and in considering a demurrer to the evidence we will consider only that evidence favorable to the plaintiff's case and will draw all reasonable conclusions and indulge all reasonable inferences in favor thereof. If there was substantial evidence in favor of the plaintiff, the trial court was correct in overruling the demurrer.

When thus viewed, we have proof here that the fires went out on a cold morning and when the serviceman from defendant was called and came out he poured hot water on the regulator, the gas flowed immediately, and the stoves burned when lighted. This employee of defendant told plaintiffs the next time it froze to pour water on the regulator and he showed plaintiffs where to pour it. The reasonable inference to be drawn from this circumstance is that there was ice or frost in the small hole through which it was intended the propane should escape and form gas and would not have occurred if the propane had had no water in it.

The next circumstance to be considered is the testimony that propane as manufactured is free of moisture. This is a technical term. While the propane itself is a liquid it has no $H_2O$ content. It forms a liquid under heavy pressure and at a low temperature. Hence to be successfully used it must be free from water or $H_2O$ because water freezes at a much higher temperature than is necessary to cause propane to become gas when the pressure is released. Here there must have been some water present to freeze on the cold February morning in question and propane without water in it would not have frozen.

Another circumstance to be considered is the fact that after the occasions when the stoves stopped burning when defendant delivered propane to plaintiffs two gallons of alcohol were delivered with the load of propane and the driver told one of the plaintiffs that if alcohol was put in it they would not have to worry about it freezing any more.

There was evidence that the equipment never refused to work after that time.

Defendant makes much of the fact there was testimony that propane tanks are tested at the factory by hydraulic pressure and some water may have been left in this tank from that test, also there was testimony that water might have gotten into this tank from condensation in the hose through which it was filled. For the purposes of a demurrer to the evidence, the plaintiffs do not have to exclude every other possible theory. It is sufficient if they introduce evidence from which a reasonable inference may be drawn in favor of their cause of action.

We hold there was substantial evidence introduced by plaintiffs to show the propane sold by defendant to plaintiffs was of inferior quality in that it contained sufficient water so that some of it froze and prevented the propane from escaping through the regulator and forming gas.

Other specifications argued by defendant are examined and found to be without merit.

The judgment of the trial court is affirmed.