No. 41,512·

McKINLEY-WINTER LIVESTOCK COMMISSION COMPANY, a corporation, *Appellee,* v. JOE FLETCHER, *Appellant.*

(347 P. 2d 248)

Opinion filed December 12, 1959.

*John A. Etling,* of Kinsley, argued the cause and *W. N. Beezley,* of Kinsley, was with him on the briefs for the appellant.

*James A. Williams,* of Dodge City, argued the cause and *C. W. Hughes* and *Byron G. Larson,* both of Dodge City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

FATZER, J.: This action was commenced by the appellee, McKinley-Winter Livestock Commission Company, a corporation, against the appellant, Joe Fletcher, for the recovery of money based upon an alleged oral agreement. Judgment was rendered in favor of the plaintiff and the defendant has appealed.

Because of their importance to questions presented, we first refer to the pleadings of the parties. The plaintiff's petition states the subject matter of the action to be:

"That on or about the 3rd day of June, 1955, the defendant, Joe Fletcher, and one Ray Holder of Independence, Missouri, entered into an oral contract with plaintiff for the purpose of holding a Shetland pony auction in plaintiff's sales barn at Dodge City, Kansas. That according to the terms of said contract the plaintiff was to charge a Two Dollar ($2.00) per head commission for each Shetland pony sold. That plaintiff was to bank the sale and receive payment from all purchasers of ponies or other miscellaneous items sold, and was to pay the owners of ponies and other miscellaneous items sold with plaintiff's checks. That defendant, Joe Fletcher, and said Ray Holder were partners in this venture. *That said partners were to be responsible for any loss which might occur to plaintiff by virtue of the non-payment of any checks received from purchasers at this auction.*

"That during the course of said auction on or about June 3, 1955, one Bob Smith purchased a number of Shetland ponies and other miscellaneous items for a total sum of Four Thousand Ninety-one and 36/100 Dollars ($4,091.36). That said Bob Smith issued his check on an Arkansas City, Kansas, bank, and that payment was refused by said bank for the reason that the said Bob Smith had no funds and no account in said bank." (Emphasis supplied.)

Summarized, the defendant's answer contained a general denial, and then admitted all of the allegations of the petition except the last sentence of the first paragraph italicized above; it further alleged that if plaintiff did not in fact receive payment for the ponies and other items purchased by Smith, it nevertheless delivered the ponies and items to Smith and that failure to receive payment was due to the negligence of the plaintiff, and further, that if payment was not received by plaintiff, it nevertheless delivered the items purchased without receiving payment, it being the duty of plaintiff to receive payment as alleged in the petition, and admitted in the answer. Thus, the only material allegation denied by the defendant was that "said partners were to be responsible for any loss which might occur to plaintiff by virtue of the non-payment of any checks received from purchasers at this auction."

As to the defense of negligence, the plaintiff's reply alleged that the defendant was estopped to claim negligence in taking the checks of purchasers because he assured the plaintiff there was no need to make inquiry concerning checks given by any purchaser at the auction.

On pretrial conference, the parties agreed that the only factual issue was the plaintiff's allegation and its denial by the defendant that "said partners were to be responsible for any loss which might occur to plaintiff by virtue of nonpayment of any checks received from purchasers at this auction." It was stipulated that plaintiff

made no investigation or inquiry concerning the validity of the checks given by Smith or his credit with the bank upon which the checks were drawn; further, that the plaintiff delivered to Smith the items purchased by him at the auction and paid for by the checks.

The action was tried by a jury upon the issues joined. The evidence showed that sometime prior to June 3, 1955, the alleged oral agreement was made with one Karl Winter on behalf of the plaintiff and by Fletcher and Holder on behalf of the defendant. Winter testified that both Fletcher and Holder were present when the final agreement was made, whereas Holder testified that he alone made the agreement on behalf of the defendant. The point is immaterial because it was admitted that Holder was Fletcher's partner. It was also shown that the checks given by Smith were not paid by the bank upon which they were drawn. An unusual feature of the checks was that Smith's signature was printed.

There was testimony by McKinley-Winter's witnesses, denied by the defendant, as to the responsibility of Fletcher and Holder for the nonpayment of checks. Winter testified that when the final agreement was made he told the defendant and his partner "our help will work for them, but that we would assume no responsibility whatever except that we would work for them and do whatever they wanted us to do in handling and putting over the sale . . . (that) . . . we didn't know these horsemen any more and was not acquainted with pony buyers at all; that we never held a pony sale, and that if they felt any questionable characters might be buying horses or ponies there, if they would get the word into our office, that we would wire on any checks that they thought necessary," and that the defendant and his partner said "that was O. K." Winter also testified that Holder replied "You have no worry at all about these checks. We know all these boys and after all, there isn't anybody but millionaires buying these ponies. Their checks will be O. K." In this connection, the allegations of the plaintiff's petition must be accepted as true, that plaintiff was to bank the sale and receive payment from all purchasers of ponies or other miscellaneous items sold and was to pay the owners of ponies or other miscellaneous items sold with plaintiff's checks.

At the conclusion of the plaintiff's evidence, the defendant demurred upon the ground that it was insufficient to prove the cause of action alleged, and that the alleged oral agreement violated the statute of frauds and was unenforceable. The demurrer was over-

ruled, and the defendant introduced his evidence. At the conclusion of all the evidence, the defendant moved for a directed verdict upon the same grounds as stated in the demurrer, and for the further reason that the pretrial stipulation of the parties showed it was the plaintiff's duty to receive payment, but that nevertheless it delivered the items to Smith without receiving payment therefor. The motion was also overruled.

The jury returned its general verdict in favor of the plaintiff, along with its answers to three special questions submitted by the court:

"1. Did the defendant or his partner, Ray Holder, tell any of the servants, agents or employees of McKinley-Winter Livestock Commission Co., a corp., that plaintiff should accept all checks given for purchases at the sale, without investigation or inquiry concerning the validity of such checks or the responsibility of the purchaser? Answer: Yes.

"2. Did defendant or Ray Holder agree to make good the bad check of any purchaser at the sale? Answer: The jury finds no such evidence.

"3. Did plaintiff deliver the ponies and other items purchased at the sale by Bob Smith to said purchaser without receiving payment therefor? Answer: No."

The defendant timely filed motions for a new trial, to set aside the jury's answer to special question No. 3 as being contrary to the stipulation of facts between the parties, and for judgment *non obstante veredicto*.

The plaintiff filed a motion to strike special question and answer No. 2 upon the grounds that it was "ambiguous and misleading and tended to confuse the jury." In its motion the plaintiff conceded there was no evidence that the defendant agreed "to make good the bad check of any purchaser at the sale" as appears in the answer to special question No. 2, but alleged that if the purpose of the question was to inquire of the jury whether the defendant or Holder agreed *to be responsible for any loss which might occur to plaintiff by virtue of the nonpayment of any check received from purchasers at the pony auction,* then the answer was contrary to the evidence because Karl Winter testified to such an agreement; further, that if such was the purpose of the question, *it should have been phrased in the language of the agreement, as alleged in the petition,* and as shown by the testimony.

The trial court overruled the defendant's motion for a new trial, sustained his motion to set aside the answer to special question No. 3, and overruled his motion for judgment *non obstante veredicto*. It sustained the plaintiff's motion to strike special question and

answer No. 2, and rendered judgment upon the general verdict in favor of the plaintiff in the amount of $4,091.36. Hence this appeal.

The defendant's contentions that the trial court erred in overruling his demurrer to the plaintiff's evidence, and in overruling his motion for a directed verdict, may properly be considered together. The defendant asserts there was no evidence to support the plaintiff's allegation that the defendant orally agreed "to be responsible for any loss which might occur to plaintiff by virtue of the nonpayment of any checks received from purchasers at this auction."

It would serve little purpose to detail all the evidence as to whether the alleged oral contract was sufficiently established to justify the trial court in submitting the case to the jury, nor would its recital usefully serve the bench and bar of the state. Suffice it to say we have carefully examined the testimony of all the plaintiff's witnesses in accordance with the rule that in testing the sufficiency of evidence as against a demurrer we will consider all of the plaintiff's evidence as true, together with all reasonable inferences to be drawn therefrom, disregard that which is unfavorable to the plaintiff, and not weigh any part that is contradictory nor weigh any differences between the direct and cross examination and if, when so considered, there is any evidence which supports or tends to support the plaintiff's case on any theory, the demurrer should be overruled (*Drake v. Moore,* 184 Kan. 309, 336 P. 2d 807 and cases therein cited; *Creten v. Chicago, Rock Island & Pac. Rld. Co.,* 184 Kan. 387, 396, 337 P. 2d 1003), and conclude that the trial court did not err in overruling the defendant's demurrer to the plaintiff's evidence upon the ground that it was not sufficient to prove the cause of action alleged. While the evidence was meager and tended to fall below the standard imposed upon the plaintiff to prove the terms of the alleged oral agreement, we think there was sufficient inferences to be drawn therefrom which permitted the trial court to overrule the demurrer and submit the case to the jury.

In view of conclusions hereafter announced, which require a reversal of this case, we deem it unnecessary to discuss and decide the second question raised by the demurrer; that is, whether the alleged oral agreement violated the statute of frauds and was unenforceable. Where a reversal is granted by this court, it ordinarily will not determine in advance questions which may or may not arise during a retrial of the cause, or anticipate what the evidence will be, or what rulings the trial court may or may not make with respect

to its presentation (*Hook v. Snell*, 180 Kan. 422, 304 P. 2d 516). We add, however, that we do not think the trial court erred in overruling the second ground of the motion for a directed verdict, since it pertained to the question of the plaintiff's negligence under the pleadings and the evidence and was one of fact to be submitted to the jury under proper instructions.

We think the trial court erred in sustaining the plaintiff's motion to strike special question and answer No. 2. The plaintiff contends the question was ambiguous, misleading and tended to confuse the jury. As previously indicated, its motion to set aside the question conceded there was no evidence the defendant agreed "to make good the bad check of any purchaser" at the sale, and alleged there was evidence the defendant agreed "to be responsible" to plaintiff for any loss which might occur "by virtue of the nonpayment of any checks" received from purchasers at the pony auction.

The contention is nothing more than a play upon words. The language employed in special question No. 2 was not essentially different than the oral contract alleged in the petition. The meaning is clearly the same. The term "bad check" has a common and well understood meaning. It means a check not paid upon presentation. When that term is used with respect to an individual's check, the phrases "to be responsible for" and "to make good" such a check mean exactly the same thing to a layman. Although couched in different language, the oral contract as alleged in the petition was clearly and fairly expressed by the court in question No. 2, which asked the jury to decide the real issue involved in the lawsuit. The question expressed the precise issue involved, and, instead of confusing the jury, we think it tended to make that issue more readily understood.

Special questions have no prescribed form. The court has the discretion as to the manner and form of special interrogatories and the duty of supervising the form of special questions so as to make them pertinent to the issues involved (*Saunders v. Railway Co.*, 86 Kan. 56, 119 Pac. 552; *Doty v. Crystal Ice & Fuel Co.*, 122 Kan. 653, 253 Pac. 611; *Dyer v. Keith*, 136 Kan. 216, 14 P. 2d 644; *Powell v. Kansas Yellow Cab Co.*, 156 Kan. 150, 131 P. 2d 686). Where, as in the instant case, that duty is complied with, mere variance in languages becomes immaterial (see *Cooper v. Seaverns*, 97 Kan. 159, 155 Pac. 11; *Jones v. Gill*, 145 Kan. 482, 486, 66 P. 2d 1033).

Moreover, the record shows the plaintiff made no objection to

the form of question No. 2 prior to its submission to the jury, while it did object to question No. 3. If there was a valid objection to the question, it was the plaintiff's duty to bring the matter to the attention of the court by timely and specific objection (*Hartman v. Hosmer*, 65 Kan. 595, 70 Pac. 598). In *Shivers v. Carlson*, 178 Kan. 170, 283 P. 2d 450, the court said:

". . . Appellant did not object to special questions No. 17 and 18. Neither did he request a special question as to whether his contributory negligence, if the jury should so find, was a proximate cause of the collision and the resulting damage. Since he did not enter his objection at the proper time, he is not in a good position to complain now." (1. c. 177.)

Thus, the plaintiff is in no position to complain about the sufficiency or form of special question No. 2 since it failed to make timely objection, and since, as we have indicated, the question was free from ambiguity and did not tend to mislead the jury.

It is evident that the answer to special question No. 2 was entirely inconsistent with the jury's general verdict for the plaintiff. The former found that neither the defendant nor Holder agreed to make good the bad check of any purchaser at the sale, while the latter found just the opposite. By striking out special question and answer No. 2, the court made apparent its dissatisfaction with the special finding, but in that situation it had no right to strike the question and answer and render judgment in favor of the plaintiff upon the general verdict, presumably, upon the theory that under those circumstances the record indicated the alleged oral contract had been proved. The effect of the court's action was to deny the defendant his right to a trial by jury (*Tritle v. Phillips Petroleum Co.*, 140 Kan. 671, 37 P. 2d 996; *Walker v. Colgate-Palmolive-Peet Co.*, 157 Kan. 170, 193, 139 P. 2d 157; *Underhill v. Motes*, 160 Kan. 679, 682, 165 P. 2d 218; *Lord v. Hercules Powder Co.*, 161 Kan. 268, 273, 167 P. 2d 299; *King v. Vets Cab, Inc.*, 179 Kan. 379, 295 P. 2d 605, 56 A. L. R. 2d 1249).

In considering answers to special questions the court is to give them, if possible, such a construction as will bring them in harmony with the general verdict (*Witt v. Roper*, 149 Kan. 184, 86 P. 2d 549; *Dick's Transfer Co. v. Miller*, 154 Kan. 574, 119 P. 2d 454), and if one interpretation leads to inconsistency and another is in harmony with the general verdict, the latter is to be adopted (*Marley v. Wichita Transportation Corp.*, 150 Kan. 818, 96 P. 2d 877; *Applegate v. Home Oil Co.*, 182 Kan. 655, 660, 661, 324 P. 2d 203). Where, however, a verdict is uncertain by reason of an inconsistent finding,

it cannot be cured by disregarding the uncertain portion, although the verdict is sufficient without it. In this case the general verdict showed the plaintiff had a right to recover, and the jury's answer to special question No. 2, showed it had not. In such circumstances, the case is left in the condition of being undecided and a new trial should be granted.

The judgment is reversed with directions to the trial court to set aside the judgment in favor of the plaintiff and grant the defendant a new trial.

It is so ordered.