No. 46,063

DONALD D. TILLEY, et al., *Appellants*, v. INTERNATIONAL HARVESTER COMPANY, a Corporation, *Appellee*.

(490 P. 2d 392)

Opinion filed November 6, 1971.

*Mary A. Senner,* of Turner & Balloun,˙ Chartered, of Great Bend, argued the cause and was on the brief for the appellants.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Hugh D. Mauch,* of Great Bend, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is a consolidated appeal from judgments entered in favor of the defendant, International Harvester Company (sometimes referred to as International) in four separate products liability actions brought individually by Donald D. Tilley, Frank V. Kincaid, Carolyn Kincaid and Vicki Decker. These parties have appealed and will be referred to collectively as plaintiffs.

Since the points raised on appeal relate primarily to matters of procedure and instructions, a detailed statement of facts will not be required at this time. The lawsuits grew out of an accident occurring the night of December 7, 1964, on U. S. highway 56 a short distance east of Great Bend, when the right rear wheel on Mr. Tilley's International truck broke down as he was hauling a load of cattle from Boulder, Colorado to Carthage, Missouri. As the wheel gave way, the truck turned over on its right side almost blocking the road. Tilley attempted to warn an approaching vehicle but was unable to stop it in time and it crashed into the disabled truck. The driver of the car, Frank V. Kincaid, and his two passengers, Carolyn Kincaid and Vicki Decker received personal injuries.

Originally the plaintiffs filed their actions against both Keller Truck & Implement Corporation, which had sold the truck to Tilley, and International Harvester Company. The trial court sustained a motion to quash the service against Keller and the actions were dismissed against it. On appeal to this court, the dismissals as to Keller were upheld. (*Tilley v. Keller Truck & Implement Corp.,* 200 Kan. 641, 438 P. 2d 128.)

Although immaterial to our decision in this case, we have been advised that plaintiffs later brought suits in Colorado against Keller but that those actions were later dismissed for lack of prosecution and on appeal the dismissals were affirmed.

The four instant cases were consolidated for trial in the district court of Barton County, and trial was commenced March 10, 1969, as to liability. The jury returned a special verdict in which it found that International had committed no breach of warranty or act of negligence culminating in injury or damage to plaintiffs.

Four claims of error are presented on appeal. The first two may be discussed together, the contention being that the trial court abused its discretion (1) in curtailing the discovery of defendant's expert witnesses and permitting them to testify and (2) in denying a continuance. The background of those complaints must be sketched.

A preliminary pretrial conference was held May 29, 1968, at which time the court ruled that on or before August 1st, the parties were to exchange reports of their experts, including their findings and conclusions regarding the alleged defects in the wheels of the Tilley truck; that at the time of exchange the plaintiffs were to specify with particularity what standards they were using to support their claim that the bolts on the wheels of the truck were below usual strength; that if defendant's motion for summary judgment was overruled prior to the next pretrial conference, the plaintiffs and defendant, within a reasonable time, were to exchange names of witnesses and exhibits they believed would be used at the trial, but neither would be bound by the list which should be submitted in its entirety at the next pretrial conference. The court also indicated the cases might be such that they should be "split-tried" and such question would be discussed at the next pretrial.

The second pretrial conference took place December 12, 1968. On this occasion, one of the defendant's lawyers stated he was unable to supply the names of his expert witnesses until he could go to Fort Wayne and interview the people there. Being queried by the court if he could inform opposing counsel in fifteen days, the attorney stated that the time suggested was too short, considering the upcoming Christmas holidays. The court thereupon ruled that defendant should supply the names in such time that plaintiffs would have a chance to depose them if the need were felt. The parties agreed that the names should be set forth in the pretrial order which defendant's counsel was to prepare.

On January 8, 1969, counsel for plaintiffs requested that the case be set for trial and the court designated March 10, 1969, as the date. The names of defendant's experts were not made known to plaintiffs

until February 20, or 21, 1969, when counsel received the pretrial order listing them. On March 4 a hearing was held before the court, where it developed that in August the plaintiffs had been furnished the reports of International's own experts, and hence their names had been known for some time, even though plaintiffs had not deposed them. Counsel for plaintiffs thereupon withdrew their request that those witnesses be made available for pretrial deposition.

However, the court did rule that whatever witnesses the defendant expected to use from the Budd Company (two were listed) be made available for deposing on the Tuesday night before they were to testify; that the depositions be taken at their motel; that direct examination of each be limited to one hour and cross-examination to twenty minutes; and that copies of their reports be furnished to plaintiffs' counsel beforehand. After entering these orders, the trial court overruled plaintiffs' motion for continuance.

On Tuesday evening, only one of the Budd witnesses showed up, a Mr. Twisdom. His deposition was taken pursuant to the rules laid down by the court. Subsequently, Twisdom appeared at the trial and testified. It may be noted at this point that plaintiffs' interrogation of Twisdom, in deposing him, related almost entirely to the contents of a Budd Company manual and little, if any, to his report. When the defendant called Twisdom as its witness, plaintiffs moved to suppress his testimony. That motion was overruled subject to the qualification laid down by the court that plaintiffs' counsel would be allowed more latitude than usual on cross-examination.

With this lengthy background out of the way, we may turn to the first two questions on appeal, the gist of which have already been stated.

In the official reports of this court many decisions can be found relating to judicial discretion and the bounds of its exercise. In *Willoughby v. Willoughby,* 178 Kan. 62, 283 P. 2d 428, it was said of judicial discretion that it implies the liberty to act as a judge should act, upon fair judicial consideration, and not arbitrarily. The Court of Appeals for the Tenth Judicial Circuit, in *Atchison, Topeka and Santa Fe Railway Co. v. Jackson,* 235 F. 2d 390, described judicial discretion in these words:

". . . The term discretion when used as a guide to judicial action means sound discretion exercised with due regard for that which is right and equitable

under the circumstances. It means discretion directed by reason and conscience to a just result, and it frequently involves painstaking consideration of many factors, giving to each the weight to which it is appropriately entitled. . . ." (p. 393.)

Our cases are many to the effect that upon appellate review the discretionary orders or rulings entered by a trial court will not be overturned or set aside in the absence of a clear abuse of discretion. (See cases in 1 Hatcher's Kansas Digest (Rev. Ed.) Appeal & Error, § 444 *et seq.*) This legal principle must be our guide as we direct our attention to the rulings made by the court in this case.

Overall, we may say at this point that we have not been able to find anything in the record which, in our view, would justify a finding that the court abused its discretion.

K. S. A. 60-230($b$) (now K. S. A. 1970 Supp. 60-230[$b$]) relates to depositions upon oral examination and provides, so far as material, that the judge may make any order which justice requires to protect the party or the witness from annoyance, undue expense, embarrassment or oppression and that this power is to be liberally exercised toward the accomplishment of its purpose to protect parties and witnesses. The statute was patterned after Rule 30, Federal Rules of Civil Procedure.

Since these actions were tried, both K. S. A. 60-230 and Federal Rule 30 have been revised, but without substantial change so far as the issues here are concerned. In 2A Barron & Holtzoff, § 715, p. 231, we find this statement with respect to Federal Rule 30 (before revision):

". . . These provisions give the court broad power to control the use of the discovery process and to prevent its abuse, and the exercise of this power is in the sound discretion of the court."

To similar effect, see Wright & Miller, Federal Practice and Procedure: Civil, § 2116, p. 427.

In ruling on plaintiffs' request that defendant be required to produce, for pretrial deposing, the experts it proposed to use from Budd, the court was entitled to consider, among other matters, that Budd was not a party to this lawsuit and that International was not in a position to control its employees or to compel them to come to Great Bend at its beck and call; that inconvenience to the Budd Company and to the witnesses themselves might result if the latter were tied up in Great Bend for a few extra days; that additional expenses would be incurred; that should the depositions consume the full

time allotted, several hours would be consumed, tying up lawyers and witnesses who must be ready for court next morning, and leaving but a few short hours for transcription of the testimony. As it turned out, Mr. Twisdom alone showed up, but when the court made its ruling two experts had been expected.

It should be kept in mind, also, that reports from both prospective witnesses were to be provided beforehand in order that counsel might have an opportunity to become familiar with their expected testimony. Finally, it is important to remember that when plaintiffs objected to Twisdom's becoming a witness for defendant, the trial court stated that greater latitude than usual would be extended on cross-examination.

Plaintiffs have made much of a contention they were taken by surprise by Twisdom's testimony and thus were prejudiced. In this connection we should point out that no attempt had been made to depose the experts among International's staff on the subject of the wheel assembly, even though plaintiffs had received reports from three of them in August. Twisdom's assessment of what caused the wheel to collapse appears to have been in basic agreement with International's own experts. Here it might be well to interject that as we read the record, the dispute between the opposing experts finally boiled down to whether the bolts gave way to metal fatigue because they were overtorqued, or undertorqued. In any event, we find it hard to apprehend how Twisdom's testimony could have come as any great surprise.

It has often been said that the granting or refusal of a motion for continuance rests within the sound judicial discretion of the trial court and its judgment will not be disturbed on appeal in the absence of a clear showing of abuse. (2 Hatcher's Kansas Digest (Rev. Ed.) Continuance, § 1.) This rule is now embodied in K. S. A. 60-240.

Two pretrial hearings had been held in this case. On January 8, 1969, plaintiffs requested that the case be set for trial, although they knew some witnesses were not listed. That was nearly two full months before the continuance was sought on March 4, six days before trial was to commence. The court, and no doubt counsel, had scheduled their times accordingly. Arrangements had been made for the attendance of many out-of-state witnesses and they had made plans to attend. These were significant factors

to be weighed in considering the motion and the court cannot be faulted for its decision.

This case was bitterly fought from stem to stern. Heated exchanges took place between capable counsel. Time does not permit, nor would this opinion gain in stature by a recitation of the several disagreements at which a beleagured court was required to officiate. Taking an overall view of the situation, we are obliged to conclude that the trial court, under trying circumstances, retained its judicial composure and that its sound discretion was not abused.

It is next argued that the court erred in trying this action as a "split-trial" case. The statute under which the court made its ruling is K. S. A. 60-242(*b*) (now, as amended by Supreme Court Rule, K. S. A. 1970 Supp. 60-242[*b*]). This section of the code provides, so far as material at this time, that the judge in furtherance of convenience or to avoid prejudice may order a separate trial of any claim or issue. The statute is drawn from Federal Rules of Procedure No. 42. (*Scott v. Keyse,* 200 Kan. 625, 438 P. 2d 112.) Professor Moore in commenting on the federal rule, (5 Moore, Federal Practice, 2d Ed. 1969, ¶ 42.03 at 42-41, 42-42.) states:

".  .  . Separate trial may properly be ordered on the issue of the defendant's liability to respond in damages, particularly where plaintiff's proof of damages would involve the testimony of a large number of persons. .  .  ."

We find this language peculiarly pertinent to the situation at hand, in view of the fifteen doctors whom plaintiffs had listed as witnesses.

This court has said in previous decisions (see, *Thomas v. Kansas City Southern Rly.,* 197 Kan. 747, 755, 421 P. 2d 51; *Guy Pine, Inc. v. Chrysler Motors Corp.,* 201 Kan. 371, 373, 440 P. 2d 595) that the legislative intent behind K. S. A. 60-242(*b*) leaves to the discretion of the trial court the decision whether or not issues should be separated for trial.

The decision to try these cases on a split-level basis was not hastily nor covertly made. At the pretrial hearing in May, the judge indicated the trial might be split and that this question would be discussed at the next conference. On December 12th the court announced it would defer decision of the matter depending on the complexion of the case as it progressed, but would hear evidence as to liability first before determining whether to admit evidence as to damage or to submit the liability issue alone to the jury, and

that a one-day recess would be granted should the court decide to admit damage testimony.

In response to the court's tentative proposal to try the issues separately, plaintiff's counsel replied he would not agree at that time; he might or might not agree, depending on how the trial had gone on the liability issue. In their opening statement, plaintiffs advised the jury that the issues would be split, with liability first to be tried, and that damage evidence would then be presented if the jury found liability on the part of the defendant. The record reflects that while both sides moved for judgment at the conclusion of all the evidence, and plaintiffs asked that the issue of damages alone be submitted, neither side expressed or renewed any objections to the split-trial procedure when the case was finally submitted to the jury.

The plaintiffs argue they were prejudiced by the separation of issues because the lapse of time between accident and trial had erased all outward signs of physical injuries. We are not impressed with this argument. Moreover, instead of voicing an objection to the split trial, the plaintiffs played cat and mouse, delaying their decision until they could observe how the trial was progressing, and at a later point in time actually appearing to acquiesce in the split-trial procedure. They are now in no position to complain of a split trial, after engaging in "wait and see" tactics.

Finally, the plaintiffs complain of two instructions. The first, instruction 7, reads:

"A manufacturer selling a motor vehicle for use as such impliedly warrants that it is reasonably fit for such purpose, at the time it left the manufacturer.

"A manufacturer who breaches this warranty is liable to a person who sustains injury as a result.

"In this case, there would be an implied warranty by the defendant corporation that the truck sold to plaintiff Tilley was reasonably fit for the uses customarily made of a truck of that size and type as of the time it left the defendant's place of business in Denver."

The plaintiffs aim their objection at the final paragraph. They contend that the implied warranty of fitness attached to Tilley's truck at the time it left Keller's place of business.

We find no fault with the instruction. The language which is criticized closely follows our decision in *Evangelist v. Bellern Research Corporation*, 199 Kan. 638, 433 P. 2d 380, where, on page 646, we said:

"Only recently we had occasion to point out that irrespective of the theory of recovery—negligence or implied warranty—a prerequisite to recovery against a manufacturer for a defective product is that the plaintiff must show the product was defective at the time it left the manufacturer's control. (*Jacobson v. Ford Motor Co.*, 199 Kan. 64, 427 P. 2d 621.) The rule is well stated in *Gardner v. Coca-Cola Bottling Co.*, 267 Minn. 505, 127 N. W. 2d 557:

"'Before liability can result from a breach of an implied warranty there must be proof from which an inference is permissible that the product was defective. In Prosser, Torts (2 ed.) § 84, p. 509, we find the following:

"'". . . The existence of the warranty of course does not eliminate the necessity of proof that the product was defective when it left the defendant's hands; . . ."'" (p. 510)

"Also, see Anno. 81 A. L. R. 2d 259. Thus, it may be said as a general rule that there must be evidence from which it may reasonably be inferred that the defect existed at the time the product left the possession or control of the party sought to be held liable."

The truck in question was purchased by Mr. Tilley from Keller Truck and Implement Corporation in a deal involving a trade. The Keller Company is a dealership handling International products and it obtained Tilley's truck from International's branch office in Denver. The truck itself was taken by Keller to its place of business where it was given a dealer's checkup before being delivered to Mr. Tilley.

We believe the instruction was properly given. The truck had passed from defendant's control when it was removed by Keller, the dealer, and taken to its own business place.

The other challenged instruction, No. 12, concerns the duty of the buyer to use ordinary care for his own safety and protection. The substance of the instruction, which is taken from PIK 13.06, is not attacked, but the plaintiffs urge it had no place in this case and should not have been given. They point to what is contained in the "Notes on Use" which follow the PIK instruction, where it is said that 13.06 should be preceded by PIK 4.01, which deals with contributory negligence, and is applicable only where liability is predicated on negligence, and the defendant contends that the buyer failed to observe dangerous condition or failed to use the product according to directions or used it in an abnormal manner.

We need not decide whether it was proper to give the instruction in this case, for the jury absolved the defendant of negligence. Hence, the question of contributory negligence becomes immaterial and the instruction cannot be deemed prejudicial.

The judgment of the court below is affirmed.