No. 46,443

CORINE M. BUTTERFIELD, *Appellant,* v. PEPSI-COLA BOTTLING
COMPANY OF WICHITA, INC., *Appellee.*

(499 P. 2d 539)

Opinion filed July 19, 1972.

*Davis S. Carson,* of Sowers, Sowers, Carson and Johnston, of Wichita, argued
the cause and was on the brief for the appellant.

*William R. Smith,* of Hershberger, Patterson and Jones, of Wichita, argued
the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: In this action for damages for personal injury
arising from a bursting soda water bottle plaintiff Corine M.
Butterfield seeks recovery from defendant Pepsi-Cola Bottling Com-
pany of Wichita, Inc., for breach of implied warranty of fitness.
Judgment was entered against plaintiff as a result of a jury's ad-
verse finding on this issue and she has appealed.

Plaintiff-appellant's evidence at trial revealed the following:

She owned and operated a small grocery store in Milan, Kansas.
Defendant-appellee bottled and distributed soft drinks, including
Diet Pepsi-Cola. On May 19, 1969, appellee's route man delivered
one case of Diet Pepsi-Cola and several cases of other kinds of
soft drinks to appellant's store. Appellant had a rack in which
all the various cartons were kept for sale to her customers.

On the evening of May 26, 1969, appellant's supply of Diet Pepsi-
Cola had dwindled to a single bottle. At this time she removed
that bottle from the pop rack, intending to place it in the cooler
so that she might consume it herself the following day. However,
the cooler was full, so she placed the bottle on the floor behind her

checkout counter from whence she could put it in the cooler when space became available. The next day, May 27th, she picked up the bottle, holding it by the neck, and when she had lifted it about eight to twelve inches it exploded, injuring her leg. Appellant summoned a part-time employee to tend the store while she sought medical attention. This employee promptly swept up the pieces of the broken glass bottle and disposed of them in the trash can.

Appellant further testified she had her air-conditioner operating at the time of the incident but the ducts were not near the bottle and the room temperature was between seventy and seventy-five degrees; that she did not bump the bottle in any way prior to the explosion.

Appellee's employee who delivered the bottle to appellant, called as a witness by her, stated his truck had been loaded by loaders at Wellington; that the vehicle rode "fair for a truck", "It was a pretty smooth running truck", it was "pretty rough" when going over railroad tracks, and when driving over railroad tracks "You can shake them [the bottles] plumb off the truck if you want to, if you run over them fast enough".

In behalf of appellee its route manager testified he interviewed appellant concerning the incident one or two days after it occurred; that appellant described the event to him, stating she had set the bottle down on the floor, turned around to pick up some cookies, then had turned back and picked up the bottle again when it exploded or broke.

Appellee's production manager testified as to the mechanics of the bottling process at appellee's plant, describing the procedures used; after washing and inspection bottles are placed on a conveyor which takes them to a filling machine where carbon dioxide is inserted and they are subjected to a pressure of fifty-five pounds; at this point bottles which have a flaw in them will break; the pressure is gradually reduced so as to prevent foaming when the bottles are filled; the pressure is completely released and the bottles remain unsealed prior to being capped in the crowning machine; there is pressure after the bottles are crowned; a bottle can break any time from shock, such as hitting it; such a bottle will break shortly after it receives the shock, "Perhaps a minute or split seconds"; bottles can be subjected to occasional knocking after distribution to dealers.

As indicated, appellant relies for recovery upon the theory of breach of implied warranty of the fitness of the bottle for its in-

tended purpose. The jury was not called upon to render a general verdict. Instead the issues were submitted to it upon special verdicts in the form of interrogatories, the first of which, together with the jury's answer, was as follows:

"1. Was the bottle of Diet Pepsi-Cola reasonably fit for the purpose for which it was intended and reasonably safe at the time it was delivered to the plaintiff's store?

"Answer: YES"

Succeeding questions dealt with the damage aspect and were not required to be answered in event of an affirmative answer to the first question. The trial court entered judgment for defendant-appellee on the foregoing answer to question No. 1 and this appeal ensued.

Appellant's specifications of error will be dealt with chronologically.

Appellant asserts the trial court erroneously permitted appellee's production manager to give expert testimony, over objection, as to the time when flawed bottles would blow up. This point lacks merit. After the question embracing the challenged testimony had initially been put to the witness but prior to receipt of an answer appellant did object on the ground of the witness's lack of qualification. The objection was made prior to any questioning of the witness as to his qualification as an expert and, quite properly, was sustained. Thereafter appellee elicited considerable testimony upon this subject. The witness then gave the testimony now complained of but the objection was never renewed.

The failure to renew the challenge may well have been because the witness was shown to have had considerable occupational experience in the soft drink bottling industry, having been employed in various capacities in it since 1936. He demonstrated familiarity with breaking bottles and was sufficiently qualified to give the testimony now challenged, which was relevant evidence.

At the conclusion of all the evidence appellant moved for a directed verdict in her favor on the issue of liability. The trial court denied this motion and appellant assigns the ruling as error. She also asserts the jury's verdict was contrary to the law and the evidence. In view of the arguments advanced and the particular posture of the case, the contentions may be considered together. Essentially appellant urges that all she had to show to be entitled to a verdict on the issue of liability was the fact that the bottle burst

and she was injured thereby. She cites and relies on cases involving the sale of food for immediate consumption, such as *Stanfield v. F. W. Woolworth Co.*, 143 Kan. 117, 53 P. 2d 878, and *Swengel v. F. & E. Wholesale Grocery Co.*, 147 Kan. 555, 77 P. 2d 930, as well as those in which foreign substances were found in bottles, such as *Sharp v. Pittsburg Coca Cola Bottling Co.*, 180 Kan. 845, 308 P. 2d 150, and *Simmons v. Wichita Coca-Cola Bottling Co.*, 181 Kan. 35, 309 P. 2d 633. She asserts there was no evidence of mishandling of the bottle by her or by anyone under her control.

Ever since *Nichols v. Nold*, 174 Kan. 613, 258 P. 2d 317, 38 A. L. R. 2d 887, it has been well established that an implied warranty exists in the manufacture, distribution and sale of a carbonated beverage bottle, such as a Pepsi-Cola bottle, such warranty being that the container is reasonably fit for the purpose for which it is intended. And it is true that a claim for relief for breach of implied warranty may be proved by circumstantial evidence (*Balthazor v. B & B Boiler & Supply Co.*, 169 Kan. 188, 217 P. 2d 906); however, it does not thereby follow, as asserted by appellant, the mere fact a bottle broke while in the hands of a user constitutes of itself a breach of warranty on the part of the bottler-distributor.

In *Evangelist v. Bellern Research Corporation*, 199 Kan. 638, 433 P. 2d 380, the plaintiff was injured when a partially filled Pepsi-Cola bottle broke as he was attempting to recap it. Recovery was sought against both the maker of the recapping device and the bottler-distributor of the beverage. In discussing the liability of the latter this court stated:

"The burden of proving a breach of implied warranty was on the plaintiff, and that burden was not sustained simply by showing the bottle broke and he was thereby injured. . . . In other words, it was incumbent upon plaintiff to establish the bottle was defectively manufactured. . . . [p. 642.]

"Only recently we had occasion to point out that irrespective of the theory of recovery—negligence or implied warranty—a prerequisite to recovery against a manufacturer for a defective product is that the plaintiff must show the product was defective at the time it left the manufacturer's control. . . . The rule is well stated in *Gardner v. Coca-Cola Bottling Co.*, 267 Minn. 505, 127 N. W. 2d 557:

" 'Before liability can result from a breach of an implied warranty there must be proof from which an inference is permissible that the product was defective. In Prosser, Torts (2 ed.) § 84, p. 509, we find the following:

" ' " . . . The existence of the warranty of course does not eliminate the necessity of proof that the product was defective when it left the defendant's hands; . . ." ' (p. 510.)

"Also, see Anno. 81 A. L. R. 2d 259. Thus, it may be said as a general rule that

there must be evidence from which it may reasonably be inferred that the defect existed at the time the product left the possession or control of the party sought to be held liable." (p. 646.)

(See, also, *Tilley v. International Harvester Co.*, 208 Kan. 75, Syl. ¶ 8, 490 P. 2d 392.)

In turning to the evidence in the case at bar it should be borne in mind we are not called upon to determine whether appellant made out a submissible case for jury determination, as is the situation where a plaintiff's case has been as a matter of law withdrawn from jury consideration. Here appellant's claim was submitted to the jury. From the outset the question of causation in fact, that is, whether appellee's breach of warranty caused appellant's damage, was a contested issue. The only admission made by appellee throughout was that it had sold the offending bottle to appellant on May 19, 1969; hence the burden was on appellant to prove the bottle was defective when it left appellee's control.

Appellant's only evidence on this score was her own testimony that the bottle exploded in her hand and she had not previously bumped it. Unfortunately for her the broken pieces of glass were immediately disposed of, making them unavailable for examination and rendering it impossible to produce direct evidence as to the condition of the bottle at the time it broke. Appellant had no expert testimony of any kind. Appellee did produce such testimony. This evidence indicated that if a bottle contained a flaw it would break under pressure while being filled and, further, that a bottle would also break within a very short time upon receiving external impact. In a limited sense only can appellant's testimony be deemed to be undisputed. However, even thus considered, a jury is not required to accept the self-serving assertions of a litigant upon whom rests the burden of proof. In *American Housing & Investment Co. v. Stanley Furniture Co.*, 202 Kan. 344, 449 P. 2d 561, we stated.

"The effect of a negative finding of fact by a jury, as contrasted to an affirmative one, against one upon whom the burden of proof rests, is that such party did not sustain that burden. Absent arbitrary and capricious disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice on the part of the jury, such finding cannot be disturbed. Appellate courts cannot nullify a jury's disbelief of evidence nor can they determine the persuasiveness of testimony which a jury may have believed." (Syl. ¶ 1.)

In *Sexsmith v. Union Pacific Railroad Co.*, 209 Kan. 99, 495 P. 2d 930, we said:

"On a motion for directed verdict the trial court does not weigh evidence but must accept as true all the facts which the evidence tends to prove and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion, and if the evidence is of such character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury.

"In considering a motion for directed verdict the question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party. Even where facts are undisputed it is possible that conflicting inferences may be drawn from those facts, and where this is true, then the issues must be submitted to the jury." (Syl. ¶¶ 2, 3.)

Beyond its expert testimony appellee also produced testimony by its route manager that a day or two after the incident appellant had related a slightly different version. This evidence was not wholly consistent with that given by appellant on the witness stand and the jury might possibly have inferred that her manner of handling the bottle produced the shock from which it broke. Also working against appellant in establishing as a fact that the defect which caused her harm existed when she purchased the bottle was the lapse in time after the bottle had left the control of appellee until injury and the fact it had after delivery been placed in a display rack accessible to the public.

We need not further iterate familiar rules respecting the sufficiency of evidence requisite either to directing a verdict for the one upon whom the burden of proof rests or to sustaining a verdict adverse to that litigant. Suffice it to say, we find no merit in either contention advanced by appellant.

Appellant asserts the court erred in submitting special question No. 1 to the jury. She focuses on the words "delivered to the plaintiff's store" used therein and argues the court should instead have framed the question so as to encompass the time when the bottle was "used". Appellant relies on certain language in K. S. A. 84-2-314 (2) (c) but the thrust of the argument is not entirely clear as applied to a bursting bottle case. The question was geared into the trial court's instructions respecting appellant's allegations of breach of warranty, her burden of proof and with instruction No. 5, which was as follows:

"The bottlers of a carbonated soft drink such as Diet Pepsi-Cola impliedly warrant that a bottle of Diet Pepsi-Cola is reasonably fit for the purpose for which it is intended and is reasonably safe. If this implied warranty of reasonable fitness and reasonable safety was breached by the defendant and if this

breach was the proximate cause of the bottle exploding, then and in that event the defendant is liable to the plaintiff for her injuries."

At trial appellant specifically stated she had no objection either to the instructions or to the form of the special verdicts. It has always been the rule in this jurisdiction that where no objection was made . to special questions at the time they were submitted to the jury, their propriety may not be questioned for the first time upon appeal (*McKinley-Winter Livestock Commission Co. v. Fletcher*, 185 Kan. 637, 347 P. 2d 248; see also *Kirkendoll v. Neustrom*, 379 F. 2d 694 [10CA, 1967]). Moreover, as already indicated, we see nothing legally amiss in the language of the interrogatory (*Evangelist v. Bellern Research Corporation*, supra).

Appellant's final specification of error arises from an additional instruction to the jury given at its request after it had commenced its deliberations. The jury's question and the court's response thereto dealt with the time element involved in the implied warranty of fitness of the bottle in question. Although couched in different language the additional instruction was in line with instruction No. 5, which we have already quoted, and actually amounted only to an elaboration of that instruction. The record indicates the jury's questions and the court's proposed answers were discussed between court and counsel and, although opportunity was afforded, no objection was made. The instruction was not erroneous.

In conclusion, it may be said this was essentially a fact case, fairly tried and submitted to a jury for decision under proper instructions. The jury verdict resolved the crucial issue against appellant. We find nothing to warrant disturbing that verdict and the judgment is affirmed.

APPROVED BY THE COURT.

PRAGER, J., concurs in the result.

FATZER, C. J., concurring in the result and dissenting in part: Limitation of time precludes a lengthy treatment of the points raised by this appeal. While I agree with the result of this case, I have difficulty with the reasoning by which the result is reached.

Primarily, I object to the language found in special interrogatory No. 1, submitted to the jury for its special verdict:

"1. Was the bottle of Diet Pepsi-Cola reasonably fit for the purpose for

which it was intended and reasonably safe *at the time it was delivered to the plaintiff's store?*

"Answer: Yᴇs." (Emphasis supplied.)

In my opinion, that portion which is italicized is a relaxation of the law in this jurisdiction pertaining to a breach of implied warranty. I am reluctant to place the unqualified burden upon the plaintiff to show that the product was defective at the time it left the manufacturer's control. The landmark case of *Nichols v. Nold,* 174 Kan. 613, 258 P. 2d 317, 38 A. L. R. 2d 887, is to the contrary, and places the burden upon the defendant in such a context to explain why the bottle exploded, in the absence of some evidence indicating an intervening cause. In that case, Mr. Chief Justice Harvey, speaking for this court, said:

" 'Viewing realistically the situation presented by the circumstances of the present case, it is obvious that, so far as the evidence discloses, the wife plaintiff was not injured through any fault of her own, and therefore, if the occurrence of the accident was due to negligence on the part of either of the defendants, plaintiffs should be entitled to redress. It is clear too that the breaking of the bottle could have resulted only from a defect in the bottle itself, or from an excessive internal pressure due to over-carbonation, or from subjection of the bottle to some extreme atmospheric or temperature changes, or from some mishandling, as for example, the striking of it by a hard object. Manifestly it would be entirely beyond the ability of the plaintiffs to ascertain and establish which of these possibilities was in fact the cause of the accident, whereas the defendant Beverage Company could readily explain the equipment and the methods employed by it in bottling the ale and the defendant A. & P. Company was equally in a position to explain the manner in which it handled, displayed and protected the bottles placed on its shelves for sale. It would seem, therefore, notwithstanding the limitations on the applicability of the doctrine of res ipsa loquitur and exclusive control previously referred to, that reason and justice alike should entitle plaintiffs to the benefits of those methods of establishing a prima facie case. Plaintiffs having testified to the manner in which the accident occurred, the burden should then rest upon the defendant A. & P. Company to show that after the bottle came into its possession it was not subjected to any mishandling or to any unusual atmospheric or temperature changes. The duty would then devolve upon the Beverage Company to establish that it conducted its operations with due care and according to the usual and proper methods generally employed in the bottling industry. It would then have been for the jury to decide whether such explanations satisfactorily exculpated either or both defendants from the charge of negligence, having in mind as to the defendant Beverage Company that it might be humanly impossible, even with the best of care, to discover every latent defect in every one of possibly hundreds of thousands of bottles or to prevent a possible excess of pressure in perhaps a single one of them, and having likewise in mind as to the defendant A. & P. Company that it might be equally impossible to prevent a

bottle on a shelf from being struck or otherwise mishandled by some careless customer in a crowded store . . .'" (l. c. 616, 617.)

There is a nebulous distinction between negligence and breach of implied warranty, and a breach of implied warranty may result from negligence or failure to use due care and skill. An allegation of negligence may be considered as the manner of the breach of the implied warranty, which is the sole cause of the injury (*Crabb v. Swindler, Administratrix*, 184 Kan. 501, 337 P. 2d 986), and evidence of specific acts of negligence, or reliance upon the doctrine of *res ipsa loquitur* is admissible to prove the breach of the implied warranty. (*Nichols v. Nold*, supra.)

The majority opinion states that it finds "nothing legally amiss with the language of the interrogatory." I disagree. In my opinion, the interrogatory was legally amiss, misleading, and clearly inconsistent with the instruction No. 5, which states the law in this jurisdiction:

"The bottlers of a carbonated soft drink such as Diet Pepsi-Cola impliedly warrant that a bottle of Diet Pepsi-Cola is reasonably fit for the purpose for which it is intended and is reasonably safe. If this implied warranty of reasonable fitness and reasonable safety was breached by the defendant and if this breach was the proximate cause of the bottle exploding, then and in that event the defendant is liable to the plaintiff for her injuries."

The words "and is reasonably safe" following the word "intended" in the first sentence of the instruction, is surplusage and should not have been included. However, that language standing alone, does not make the instruction faulty.

The record reflects the jury was confused as to the duty placed upon the appellee by special interrogatory No. 1. Language in the interrogatory substantially diluted the extent of the implied warranty by limiting the responsibilities of the manufacturer to merely warrant the product was "reasonably safe *at the time it was delivered to the plaintiff's store.*"

The implied warranty announced in *Nold* does not stop at the delivery of a bottle of beverage to the front door of the supermarket; rather, it is extended to all reasonable inference that the bottle exploded as a proximate cause of a defect in the bottle itself. The court's opinion eliminates any duty on the part of the manufacturer *to foresee* the possibility of jostling of beverage bottles by clerks and customers at the supermarket after those bottles are placed upon its shelves and subsequently reach the hands of the consumer. In my opinion, the consumer has the right to rely upon the implied

warranty the bottle will not explode and is reasonable fit for the purpose for which it is intended.

As stated above, I concur in the result because the plaintiff made no objection to the language employed in the interrogatory and for that reason cannot now complain on appeal. However, because the court now finds nothing wrong with the special interrogatory and approves by implication that language, I must dissent from that portion of the opinion.

OWSLEY, J., joins in the foregoing concurring and dissenting opinion.